## FEDERAL RESERVE BANK OF PHILA-DELPHIA v. OCEAN CITY, N. J.

### No. 6011.

Circuit Court of Appeals, Third Circuit.

June 12, 1936.

Yale L. Schekter and MacCoy, Brittain, Evans & Lewis, all of Philadelphia, Pa.,

and Clarence Cole and Cole & Cole, all of Atlantic City, N. J., for appellant.

George A. Bourgeois, of Atlantic City, N. J., and John E. Boswell, City Sol., of Ocean City, N. J. (Bourgeois & Coulomb and William B. Hunter, Jr., all of Atlantic City, N. J., of counsel), for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In this case it appears that in October, 1931, the First National Bank of Ocean City closed its doors. The municipality of Ocean City had at that time on deposit some $255,000, which sum was, of course, tied up by the failure of the bank. The city was without means of paying its police, firemen, and providing for its other activities, so with the coming of the new tax year of 1932 it made efforts to sell anticipation tax notes. The legality of a municipality in New Jersey to issue such notes is provided by statute, and, where issued for that purpose, the notes are by the statute declared to be negotiable. Efforts were made by the city, without success, to sell such notes at the places where they had usually been sold by the city. These efforts failed, but the city continued its attempts to obtain money to carry on its activities. With that in view, the commissioners of the city, who were its executive officers, passed a resolution on March 1, 1932, wherein they recited that the city would have to meet its running expenses for the next fiscal year in an amount not less than $250,000, and that there were no funds available for that purpose. It further recited that the amount to be raised by the tax to meet the budget would exceed $250,000, and it was resolved that a tax anticipation note of the city in the amount of $250,000, dated March 1, 1932, and maturing September 1, 1932, should be issued, and that the proper officers of the city were authorized to make such note and to sell it at not less than par and interest, and that the city treasurer, upon payment of such purchase price, deliver it to the purchaser. In pursuance of this resolution, the proper corporate officers made and executed this note on March 1, 1932, which note was payable to the order of Henry Roeser, Jr., city treasurer. It will, therefore, appear that on said date of March 1, 1932, this tax anticipation note was for

a legal need of the city, was duly authorized, properly executed, and placed in the hands of the city treasurer to sell at not less than par. The statute of New Jersey made this note negotiable.

■ Of the legality of the note as it then stood and of its negotiability, we have no question, and it seems to us the trial judge misconstrued the fact situation when he stated that this note was nonnegotiable. If we are correct in this, this basic and fundamental holding of the judge was wrong, and the whole basis on which the case was tried (the nonnegotiability of the note and a defense by the city in the hands of a purchaser) was without support. In point of fact, the note was authorized by the city for a legitimate purpose and, when sold by the city, was negotiable and valid in the hands of a bona fide purchaser.

This state of facts existed when an effort was made by the city and the First National Bank of Ocean City to sell the note and secure money for the city's activities. Accordingly, the president of the bank and the city treasurer visited the Federal Reserve Bank and conferred with the bank's officers. That bank, according to its usual custom, declined to purchase the note from the city direct and stated that its usual course of procedure on these New Jersey tax anticipation notes was not to deal with the municipalities, but to purchase such notes from banks which would agree to two conditions: First, the added security of the bank; and, second, an agreement by the bank to repurchase the note on·demand. These two conditions were complied with. The note was indorsed by the city treasurer. It passed over to the Federal Reserve Bank. The Federal Reserve Bank entered a corresponding credit in its account with the First National Bank and the First National Bank entered a like credit to the city of an additional deposit of $250,000. The city made a corresponding entry in its books of an added credit of $250,000, and, following this, on the opening of the bank, which all parties then contemplated, the First National Bank began paying out to the city for its activities sums of money up to the amount of nearly $250,000, which money the city used for its purposes. It will thus appear from the evidence that the result of these dealings was that the city got the money for its activities, the First National Bank paid out to the city an amount equal to the proceeds of the note, and still

retained and did not pay out to the city from the city's deposit account some $255,-000.

On the 1st of September, 1932, when this note became due, the original note was canceled and a renewal note was issued in pursuance of a resolution of the commissioners dated August 31, 1932. This note was renewed several times by resolution; the note in suit being dated November 1, 1932. The bank had reopened in March, 1932, and on November 15, 1932, finally closed, at which time the situation was that the city had received on its deposit account in the neighborhood of $250,-000 and had a balance·to its credit in said account of some $255,000. In other words, the situation when the bank closed was that the city then had a frozen deposit account of some $250,000, which was its situation when this original note was given. The bank owed a frozen asset to the city of some $250,000, which was the same situation as when the note was issued. The Federal Reserve Bank held the note of the city for $250,000 and the city received $250,000 on its deposit account and used the same for the carrying on of its activities. This made out a case for the plaintiff suing on the second renewal note. What defense did the city make?

The first one was that the note was nonnegotiable. We hold this position cannot be sustained.

■ The second is that the city lent its credit to the opening of the bank, a thing forbidden by the New Jersey statute. We think it clear that when this note was executed and when it was sold by the bank to the Federal Reserve Bank, the allegation that the city was lending its credit was not supported by the facts. The note was given for a legitimate purpose, and that legitimate purpose was enjoyed by the city in the $250,000 it received and used.

■ The third was what the bank did in the way of its bookkeeping accounts. But this could in no way affect the prior transaction of the sale of the note. The alleged statement of the president of the bank as to "tying up" afforded no dependable ground of defense nor did the contention that the city was kept from enjoying the proceeds of the note. The fact is that the proceeds of the note were credited to the general deposit account of the city and while the bank confined its payments of that account to $250,000 and did not lessen the

city's deposits below the sum of $255,000, this in no way affected the validity of the transaction.

On the whole, we hold the judge erred in not giving binding instructions for the plaintiff, and, therefore, the judgment below is reversed and the record remanded for due procedure in accord with this opinion.